Points decided.

[Decided December 26, 1893.]

# FLEISCHNER *v.* CITIZENS' INVESTMENT CO.

[S. C. 35 Pac. Rep. 174.]

1. LANDLORD AND TENANT — RESPONSIBILITY FOR NUISANCE — IMPLIED COVE-
NANTS OF LEASE.— A landlord out of possession is not responsible for a
nuisance originating after the execution of the lease, unless he is in
some manner at fault for its creation or continuance. In the absence
of a covenant to repair it is the duty of the tenant, under the implied
covenants of the lease, to so use the property as to avoid the necessity
for repairs, ( *Powell* v. *Dayton R. R. Co.* 16 Or. 33, cited,) and if the prop-
erty was in good condition when demised, and leased for a purpose that
would not create a nuisance, the landlord is not liable for the creation
or maintenance of a nuisance on the leased premises.

2. LANDLORD AND TENANT — LEASE — RENEWAL.— A lease for a given period
with the privilege of extending for an additional term is, if the privi-
lege is accepted, a lease for the entire time; the additional term is not
a new demise, but a continuation of the old one.

3. NUISANCE — LANDLORD AND TENANT.— A landlord who renews a lease
after the creation of a nuisance upon the premises thereby becomes
chargeable for its continuance.

4. NUISANCE — JURISDICTION OF EQUITY — CODE, §§ 333, 380.—The remedy
provided by section 333 of Hill's Code, in cases of nuisance, is not ex-
clusive, and does not limit the remedy for nuisances to actions at law;
whenever a nuisance will cause an irreparable injury, or numerous
damage actions will be required, equity has "concurrent jurisdiction
with courts of law" within the meaning of section 380, Hill's Code,
and will enjoin the continuance of the objectionable conditions. *Parish*
v. *Stephens*, 1 Or. 73; *Luhrs* v. *Sturtevant*, 10 Or. 170; *Walts* v. *Foster*, 12
Or. 247; and *Esson* v. *Wattier*, ante, p. 7, approved and followed.

5. EQUITY — JURY TRIAL — CONSTITUTION, ARTICLE I., § 17.— A court of
equity which has gained jurisdiction of an action to restrain a pri-
vate nuisance may render judgment for damages as an incident to
the suit for injunction, notwithstanding section 17 of article I. of the
state constitution, providing that "in all civil cases the right of trial
by jury shall remain inviolate." These words continued to all suit-
ors the right of trial by jury in all cases where it was secured to
them by the laws or practices of the courts at the time of the adoption
of the constitution, but were not intended to abridge the equity juris-
diction then existing. As equity had jurisdiction to restrain nui-
sances prior to the adoption of the constitution, the jurisdition still
continues, and the matter of damages is only an incident. *Tribou* v.

*Strowbridge,* 7 Or. 156, and *Phipps* v. *Kelly,* 12 Or. 213, approved and followed.

APPEAL from Multnomah: L. B. STEARNS, Judge.

This is a suit by L. Fleischner against the Citizens' Real Estate & Investment Company to restrain the defendants from maintaining a private nuisance, and for the recovery of the damages resulting therefrom. The facts show that the plaintiff is the owner of lots five, six, and seven, in block twenty, as shown upon the recorded plat of the city of Portland, and that the defendant, the Citizens' Real Estate & Investment Company, a private corporation, is the owner of lot eight in said block, which joins plaintiff's property on the north. On September twenty-eighth, eighteen hundred and eighty-eight, John Donnerberg owned said lot eight, and on that day leased it and the building thereon to Richard Clinton and wife, to be used as a theatre for the term of three years from October first, eighteen hundred and eighty-eight, at the monthly rental of two hundred and fifty dollars. The lease, among other things, provided that it should be optional with the lessees to renew it for a further term of two years after the expiration of the first term, upon the payment of three hundred dollars per month, they agreeing to keep the building in good repair, and to make no improper use of the property, nor sublet it without the written consent of the lessor. On December fifth, eighteen hundred and eighty-nine, the said Donnerberg entered into a contract with the Citizens' Real Estate & Investment Company whereby, in consideration of five thousand dollars paid down, and the payment of twenty thousand dollars, and the execution of a note and mortgage for twenty-five thousand dollars, within six months thereafter, he agreed to execute and deliver to it a warranty deed for said property. Said

contract further provided that until the deed was executed and delivered, Donnerberg should collect the rents under the lease. On March sixth, eighteen hundred and ninety, said Clinton and wife, with the written consent of Donnerberg, assigned their interest in said lease to F. W. Eagles, as trustee for John Cort. After the lease was assigned, the use of the building as a theatre was abandoned, the first floor was cut up into saloons, stores, shops, and booths, and the second floor partitioned into lodging rooms, and all let to Chinese tenants who placed sinks, closets, and urinals therein, which were so imperfectly connected with the sewer that the slops and liquids therefrom saturated the soil beneath the building. About the time these changes were made the plaintiff commenced to excavate a cellar upon his lots for the purpose of erecting a six-story brick building, and the water, filth, and foul matter from said lot eight poured into the excavation to such an extent that the work was impeded, whereupon the tenants and landlord were notified by the chief of police, and temporary relief was obtained, whereby the plaintiff was enabled to erect one story of his building, which was roofed over, with the intention at some future time of completing the other stories. After plaintiff's building was completed, the water and foul matter from the premises occupied by said Chinese percolated through and moistened a portion of his cellar wall about sixty feet long and two and one half feet high, creating a slimy substance thereon that caused foul and noisome odors, rendering the plaintiff's premises unwholesome and sickly, and weakening the said wall.

On July thirty-first, eighteen hundred and ninety, the Citizens' Real Estate & Investment Company made final payment, and received the deed from Donnerberg and wife for said lot, and nine days thereafter commenced suit in the circuit court of the state of Oregon

for Multnomah County against John Cort, Charles Green, and others, to enjoin them from interfering with the possession of said premises, and a restraining order was issued, but before it could be served upon them, F. W. Eagles and John Cort filed their bill in the circuit court of the United States for the district of Oregon against the said company, and obtained a provisional injunction therein, whereupon said Cort and Green appeared in the state court in the said suit against them, filed a plea in abatement, and upon their motion said suit was dismissed. The Citizens' Real Estate & Investment Company appeared in said suit in the United States court, issues were joined, testimony taken, and on October sixteenth, eighteen hundred and ninety-one, a decree was rendered therein enjoining and restraining said corporation from interfering with said premises until the expiration of said lease. After the said decree was rendered the corporation secured possession of a portion of the premises claimed by it, and commenced an action in the state court against the tenants in possession of said lot, whereupon said F. W. Eagles, John Cort, and one Sigmund Schwabacher, who had acquired some interest therein, appeared in said action, and, being substituted for the tenants, filed their petition and bond for the removal of said cause, and it was by order of the court removed to the federal court, where, upon a trial of the issues, judgment was rendered against the corporation, from which it appealed. Pending the appeal a compromise was effected, and under the option provided in the contract, the corporation executed a lease to said Eagles and others, whereby, in consideration of the payment of four hundred dollars per month, it demised to them said premises for a term to expire December thirty-first, eighteen hundred and ninety-two, and said appeal was dismissed.

The plaintiff alleges the existence of the nuisance, and its effect upon his building; that he had notified the defendants to abate it, but that they had failed to do so, and that in consequence thereof his property had been damaged in the sum of three thousand dollars, and prayed that said nuisance be abated, the defendants prohibited from continuing it, and for his damages. The Citizens' Real Estate & Investment Company, after denying the allegations of the complaint, allege the facts hereinbefore recited. The testimony having been taken and submited, the court rendered a decree in favor of the plaintiff for the abatement of the nuisance, and awarded him five hundred dollars' damages, from which the company alone appeals.                    AFFIRMED.

*Mr. Albert H. Tanner* (*Messrs. John H. Mitchell* and *Hiram E. Mitchell* on the brief), for Appellant.

There is an implied covenant in every lease that the tenant will keep the premises in repair, or in other words, where there is no covenant in the lease on the part of the landlord to repair, the duty to keep the premises in repair is upon the tenant: *Powell* v. *Dayton R. R. Co.* 16 Or. 33, 8 Am. St. Rep. 251; *Ward* v. *Fagan,* 101 Mo. 659, 20 Am. St. Rep. 650 and note, 10 L. R. A. 147; *Tomle* v. *Hampton,* 129 Ill. 379; *Krueger* v. *Ferrant,* 29 Minn. 385, 43 Am. Rep. 223; *Mullen* v. *Ramear,* 45 N. J. L. 520.

During all the times mentioned in the complaint and down to the trial of this case, the premises were in the actual and exclusive possession of tenants, who had covenanted to keep the premises in repair. In such cases the tenant and not the landlord is liable for creating or maintaining any nuisance that may exist upon the premises: *Fellows* v. *Gilhuber,* 82 Wis. 639; *Wolf* v. *Kilpatrick,* 101 N. Y. 146, 54 Am. Rep. 672; *Ahern* v. *Steele,* 125 N. Y. 203, 12 Am. St. Rep. 778, 5 L. R. A. 449; *Kenney* v. *Barns,*

67 Mich. 336; *Mellen* v. *Morrill,* 126 Mass. 545, 30 Am. Rep. 695; *Chindelbeck* v. *Moon,* 32 Ohio St. 2641; *Wonder* v. *McLean,* 134 Pa. St. 702; *Gillihan* v. *Chicago R. R. Co.* 19 Mo. App. 411; *Riley* v. *Simpson,* 83 Cal. 217, 7 L. R. A. 622; *Abbott* v. *Jackson,* 84 Me. 449; *Purcell* v. *English,* 86 Ind. 34, 44 Am. Rep. 255. This company, under these authorities, was not liable for damages herein for the reason that whatever damage respondent sustained was occasioned by the acts of the tenants, and not by the acts of the landlord.

The landlord is only liable where he knowingly lets premises with a nuisance *per se* attached to them, and a lease shortening up the term of a former lease, which the landlord had no power to determine, is not such a reletting as would render the landlord liable: *Waggoner* v. *Jermaine,* 3 Denio, 306, 45 Am. Dec. 474; Woodfall's Landlord and Tenant (13th Ed.), 735; 1 Addison on Torts (Wood's Edition), § 283; *Gaudy* v. *Jubber,* 9 Best & S. 15; Ray's Negligence, 65; *Tomle* v. *Hampton,* 129 Ill. 379.

The landlord is not liable for injuries sustained by third persons if the tenant's use of the premises is what causes the nuisance: *Ahern* v. *Steele,* 115 N. Y. 212, 5 L. R. A. 449, 12 Am. St. Rep. 778; *Gaudy* v. *Jubber,* 9 Best & Smith (Eng. Q. B.), 15; *Wonder* v. *McLean,* 134 Pa. St. 334.

Before a landlord will be liable for letting premises with a nuisance thereon, it must be shown that he had notice that there was a nuisance on the premises, or that they were in a ruinous condition at the time of the letting: *Conhocton Stone Road* v. *Buffalo R. R.* 51 N. Y. 573; *Ahern* v. *Steele,* 115 N. Y. 212, 5 L. R. A. 449, 12 Am. St. Rep. 778; Cooley on Torts, pp. 608–11.

A court of equity, under the constitution and laws of this state, has no right or jurisdiction to assess damages for the alleged nuisance, and the judgment of the court

in this case assessing damages against the appellant for five hundred dollars is erroneous:   Hill's Code, § 333; *Phipps* v. *Kelly,* 12 Or. 213; *Smith* v. *Gardner,* 12 Or. 221; *Parker* v. *Manufacturing Co.* 2 Black, U. S. 545; *Hudson* v. *Caryl,* 44 N. Y. 553; *Strowbridge* v. *Tribou,* 7 Or. 156; *Van Norden* v. *Morton,* 99 U. S. 378; Pomeroy's Equity, § 175; Adams' Equity, §§ 439, 441.

*Mr. Wirt Minor* ( *Messrs. Lewis B. Cox* and *Joseph N. Teal* on the brief), for Respondent.

The owner of the property is liable in damages if he erected the nuisance or continues it after it has been erected or caused:   *Shipley* v. *Fifty Associates,* 101 Mass. 251, 3 Am. Rep. 346; *Shepard* v. *Brown,* 40 Ill. 428; *Heeg* v. *Licht,* 80 N. Y. 579, 36 Am. Rep. 654; *Morris Canal Co.* v. *Ryerson,* 27 N. J. Law, 457; *Woodman* v. *Tufts,* 9 N. H. 88; *House* v. *Metcalf,* 27 Conn. 631; *Tate* v. *Mo. Ry. Co.* 64 Mo. 149; *Smith* v. *Elliott,* 9 Pa. St. 345.

When a landlord leases premises with a nuisance *per se* attached to them, and an injury results to a stranger without his fault, the landlord is liable:   *Waggoner* v. *Jermaine,* 3 Denio, 306; *Reichenbacher* v. *Pahmeyer,* 8 Ill. App. 217; *Fish* v. *Dodge,* 4 Denio, 311, 47 Am. Dec. 254; *Brady* v. *Weeks,* 3 Barb. 157; *Staples* v. *Spring,* 10 Mass. 74; *Morris Canal Co.* v. *Ryerson,* 27 N. J. Law, 457.

The defendant is liable for the further reason that with full knowledge of the nuisance complained of it has accepted rent from the objectionable tenants:   *Stephani* v. *Brown,* 40 Ill. 428.

Opinion by MR. JUSTICE MOORE.

1.   The appellant contends that the execution of the lease on December fourteenth, eighteen hundred and ninety-one, was not a reletting of the premises, and that it

is not liable for any of the damages sustained by plaintiff. The authorities are uniform in holding that a landlord out of possession is not responsible for a nuisance occurring after the execution of the lease, unless he is in some manner at fault for its creation or continuance: *Wolf* v. *Kilpatrick*, 101 N. Y. 146, 54 Am. Rep. 672, 4 N. E. 188. When the landlord has not covenanted to keep the premises in repair, the duty is imposed upon the tenant, under the implied covenants of the lease, to so use the property as to avoid the necessity for repairs: *Powell* v. *Dayton R. R. Co.* 16 Or. 33, 8 Am. St. Rep. 25, 16 Pac. 863; and in such cases, if the property was in good condition at the time of the demise, and leased for a purpose that would not create a nuisance, the tenant, and not the landlord, is liable to third persons for injury from the creation or maintenance of any nuisance upon the leased premises: *Fisher* v. *Thirkell*, 21 Mich. 1, 4 Am. Rep. 422. The reason for this rule is put upon the theory that the lease gives to the tenant the exclusive possession of the premises, and thereby excludes the landlord's right of entry; and, his right of entry and possession being suspended during the term, it follows that his liabilities in respect to the possession are also suspended, except as to such defects in the premises at the time of the demise as might in the manner of their use produce injury to third persons. The general rule of law is that the tenant, and not the owner, is responsible for injuries received in consequence of a failure to keep the premises in repair. To this general rule the authorities recognize these exceptions: (1) When the landlord has, by an express agreement between the tenant and himself, agreed to keep the premises in repair, so that in case of a recovery against the tenant he would have his remedy over against the landlord. Then, to avoid circuity of action, the party injured by the defeat and want of repair may have his action in

the first instance against the landlord. (2) When the premises are let with a nuisance upon them, by means of which the injury complained of is received. (3) Where a landlord rents premises for a purpose which in the very nature of things would become a public nuisance: *Manufacturing Co.* v. *Lindsay,* 10 Ill. App. 583; Wood, Nuisances, § 73.

2. The lease from John Donnerberg to Richard Clinton and wife, under which the tenants claimed possession until the execution of the new one, contained an express covenant that the lessees would keep the buildings in repair. The evidence shows that the premises were in good repair when Clinton went into possession, and also in good repair at the time the deed from Donnerberg and wife was executed and delivered to the Citizens' Real Estate & Investment Company; that the use for a theatre was a lawful one and would not in its nature cause the place to become a public nuisance; but that thereafter the assignee of the lease, without the consent, and against the protest, of the owner, sublet the premises to Chinese tenants, who created the nuisance that caused the injury. Under this state of facts, if no new lease had been executed, it is clear by all the authorities the company would not have been liable for any injury arising from a use of the property by the tenants. The lease from Donnerberg to Clinton contained a provision that the lessees, at their option, might have the privilege of continuing in possession of the premises for two years after the expiration of the first term, upon the payment of three hundred dollars per month. This was a covenant that passed with the land, (Wood, Landlord & Tenant, 666,) and upon the exercise of the option, and performance of the conditions precedent by the lessees, a court of equity would have decreed a specific performance of the covenant by the lessor, (*Id.* 27,) and this option, when

exercised, created a valid lease for five years, and such additional term is not a new demise, but a continuation of the old one, (*Id.* 675,) and hence the term did not expire on the first day of October, eighteen hundred and ninety-one, nor until two years thereafter. On December fourteenth, eighteen hundred and ninety-one, after the Citizens' Real Estate & Investment Company had failed in the state and federal courts to gain possession of the premises, and realizing that it would probably be impossible to do so before the term had expired, it compromised with the lessees, and executed a new lease by which the tenants were permitted to continue in possession until December thirty-first, eighteen hundred and ninety-two, upon the payment of four hundred dollars per month. By the terms of this lease the lessees paid the owner thirteen hundred dollars more than the first agreement required, and the term was shortened ten months. This was taking a new lease, the legal effect of which was the surrender of the old one: Taylor, Landlord & Tenant, § 340.

3. Upon the surrender of the old lease, the company was invested with the right of entry, and as the nuisance was in existence upon the premises, it must be presumed to have been aware of the fact, and hence it is liable for its continuance under the exception to the general rule that it had demised premises with a nuisance then in existence thereon. The law is well settled that if the tenant creates a nuisance upon the premises during the term, by an unusual or extraordinary use thereof, although the landlord cannot be made chargeable for the consequences in the first instance, yet, if he subsequently renews the lease with the nuisance thereon, he becomes chargeable for its continuance: *Roswell* v. *Prior*, 2 Salk. 460; *Whalan* v. *Glouchester*, 4 Hun, 24.

4. Section 333, Hill's Code, substantially provides

Opinion of the court—MOORE, J.

that any person whose property is affected by a private
nuisance may maintain an action at law for damages
therefor, and if judgment be given for the plaintiff in
such action, he may, in addition to the execution to
enforce the same, on motion, have an order allowing a
warrant to issue to the sheriff to abate such nuisance;
and if it appear that such remedy is inadequate, the
plaintiff may proceed in equity to have the defendant
enjoined.   From this the appellant contends that the
statute furnishes a complete and adequate remedy at
law, and for that reason a court of equity could acquire
no jurisdiction, except as auxiliary in aid of the legal
action.   Section 380 of said Code further provides, that
"the enforcement or protection of a private right, or the
prevention of, or redress for, an injury thereto, shall be
obtained by a suit in equity in all cases where there is not
a plain, adequate, and complete remedy at law; and may
be obtained thereby in all cases where courts of equity
have been used to exercise concurrent jurisdiction with
courts of law, unless otherwise specially provided in this
chapter."   The chapter containing this section nowhere
provides that courts of equity shall not entertain jurisdic-
tion to enjoin a nuisance, and this court has, upon the
theory that "courts of equity have been used to exercise
concurrent jurisdiction with courts of law" in such cases,
fully established the rule that when a person has sus-
tained irreparable injury, or will be compelled to bring
a multiplicity of actions to recover the damage, he may
invoke the aid of a court of equity, and obtain an injunc-
tion to prevent the continuance of a private nuisance:
*Parrish* v. *Stephens*, 1 Or. 73; *Luhrs* v. *Sturtevant*, 10 Or.
170; *Walts* v. *Foster*, 12 Or. 247, 17 Pac. Rep. 24; *Esson*
v. *Wattier*, 25 Or. 7, 34 Pac. 756.   Courts of equity, then,
have concurrent jurisdiction with courts of law in certain
cases to prevent the maintenance or continuance of a

nuisance. It should be invoked, however, only where the injury complained of is irreparable, such as the destruction of property, or when it menaces the life or health of the plaintiff or of his family, or where the guilty party is not able to respond in damages for the injury. But when compensation for the injury caused by a private nuisance is the gist of the complaint, the remedy is by action at law for the damages. In the case at bar it is alleged that the water, slops, filth, and other matter from the sinks, closets, and urinals penetrated the plaintiff's cellar wall, and caused noxious and offensive pools to form in the cellar, and a slimy substance to gather along the walls, thereby tainting and corrupting the premises, and rendering them unfit for occupation. This allegation is fully supported by the evidence, and was sufficient to warrant the court in granting the injunction.

5. The court, then, having jurisdiction of the cause for the purpose of granting the injunction, could it, in view of section 17 of article I. of the constitution, which provides that, "In all civil cases the right of trial by jury shall remain inviolate," award damages for injury resulting from the nuisance? The English rule was that the court of chancery having jurisdiction for the purpose of granting the injunction, will prevent the circuity and expense of two trials, one in equity for an injunction and one at law for damages, and although it cannot decree damages for the plaintiff's loss, it will substitute an account of the defendant's profits: Adams, Eq. 219; and that this rule applied to cases of nuisance: *Id.* 208. This rule probably proceeds upon the theory that the tort may be waived, the defendant treated as an involuntary trustee for plaintiff's benefit, and required to account for the profits he has made out of the maintenance of the nuisance; and yet there must be many

cases in which no profit has been realized by the defendant, and for that reason the plaintiff would be without remedy in equity. The better rule, though it is not universal, seems to be embraced in the doctrine that if a court of equity acquires either exclusive or concurrent jurisdiction it may go on to complete adjudication, and establish purely legal rights, and grant legal remedies, which would otherwise be beyond the scope of its authority: Pomeroy, Equity Jurisprudence, § 181. This principle has been applied to cases in which a court of equity had obtained jurisdiction for the purpose of granting an injunction to restrain a private nuisance, and, having obtained jurisdiction for the purpose of awarding the special relief, the court retained the cause, and decreed full and final relief, including damages and abatement of whatever caused the nuisance: *Id.* § 237. "As an incident to the relief by injunction, courts of equity will in proper cases consider and settle the question of damages; but no bill will be entertained merely for the purpose of settling damages, that being regarded as the proper practice of the courts at law": *Bassett* v. *Salisbury Mfg. Co.* 43. N. H. 249. "A court of equity," says ORTON, J., in a suit to abate a nuisance, "having otherwise jurisdiction of the case, can award the damages as well as a court of law": *Brickner Woolen Mills Co.* v. *Henry et al.* 73 Wis. 229, 40 N. W. 809.

Courts of equity in this state, prior to the adoption of the constitution, had exercised concurrent jurisdiction with courts of law in cases of private nuisance: *Parrish* v. *Stevens*, 1 Or. 73. In *Tribou* v. *Strowbridge*, 7 Or. 156, BOISE, J., interpreting this section 17 of article I. of the constitution, said: "This language of the constitution indicates that the right of trial by jury shall continue to all suitors in courts in all cases in which it was secured to them by the laws and practices of the courts at

the time of the adoption of the constitution," and held that as the practice prior to the adoption permitted a court of law to refer long accounts for computation, the right to do so continued, notwithstanding the prohibition of the constitution. In *Phipps* v. *Kelly*, 12 Or. 213, 6 Pac. Rep. 707, it was held that where a court of equity originally had jurisdiction of any class of cases for which the proceedings at common law did not then afford an adequate remedy, such jurisdiction will not be lost by reason of subsequent legislation conferring jurisdiction on a court of law to decide such cases, unless there are negative words excluding the jurisdiction of equity. It is true that there was a complete remedy at common law in cases of private nuisance prior to the adoption of section 333 of Hill's Code, but since that section has no words negativing the jurisdiction of equity, and as in certain cases equity had jurisdiction to enjoin a private nuisance prior to the adoption of the constitution, it follows that the court had authority to render judgment for the damages as an incident to the suit for an injunction. The appellant, then, is liable in damages for some amount, and as this is difficult of ascertainment, and, as no positive rule can be established as a measure, we see no error in the court's allowance of the amount awarded, and for that reason the decree is affirmed.

AFFIRMED.